**TILLMAN, An Incompetent, In re.**

Probate Court, Darke County.

No. 24351.    Decided June 18, 1956.

## OPINION

By ZIEGEL, J.

A subtle family disturbance of apparently many years standing has come to the surface in these proceedings. Mrs. Fern T. Rehmert, now Mrs. Jefferis, has filed exceptions to her brother's, Chauncey H. Tillman's account as guardian for their mother, Mary C. Tillman. In August, 1951 this disturbance arose briefly when Mrs. Rehmert sought the appointment of a guardian for her mother, alleging that she was incompetent by reason of advanced age. At that time Mary C. Tillman was 97 years of age. That matter was "settled" when Mrs. Tillman consented to the appointment of her son, the said Chauncey H. Tillman, as her guardian for reasons of physical disability. No finding of mental incompetency was made at that time. As a matter of fact, there was testimony then, and considerable testimony in the present proceedings to the effect that while advancing years had caused her physical capacities to deteriorate considerably, her mind remained relatively alert to within a short time of her death in the spring of 1955.

The present controversy consists, basically, of three complaints the exceptor has regarding her brother's administration of her mother's guardianship. First, she complains that the expenditure of $737.78 for getting ready and conducting and sale of his ward's personal property, which grossed only $1,037.24 was excessive, invalid, and against the best interests of the ward. Secondly, she insists that certain "Christmas gift" checks which the guardian drew on his ward's account in December, 1951 were unlawful; and thirdly, she contends that by the guardian from time to time paying more for the care and support of his ward than was originally authorized by order of this Court entered on August 28, 1951, the credit asked is invalid and against the best interests of the ward.

In defending the credits taken in his account, particularly as to the first two matters complained of, the guardian advances an argument, both as to facts and as to law, the likes of which neither this Court nor any of counsel have been able to find any authority in point either in or out of this State. Chauncey H. Tillman, the guardian, testified, and his testimony was corroborated by other reliable witnesses, including his own attorney, that in spending the time and money in getting ready for and conducting the public sale of his ward's personal property, and in sending out the "Christmas" checks, he was following the instructions of his ward. Counsel therefor contends that since this ward was never determined to be mentally incompetent, and since there was ample proof that she remained mentally alert, she did not lose dominion over her property; and that regardless of the fact that a legal guardian had been appointed over her estate, she was still privileged to exercise her own free will and to direct the expenditures of her own money and the disposition of her own property.

The legal question first to be disposed of, then, is whether or not there exists in Ohio a double standard for the administration of a guardianship—one where the ward is legally incompetent, either as a result of judicial decision, or as a result of minority; and the

other where the ward is never determined to be legally incompetent, but rather consents to the appointment of a guardian over his or her property.

"Consent" guardianships arose in Ohio in 1932 when the then "new" probate code as enacted by the preceding legislature provided in §10507-2 GC (now §2111.02 R. C.) the following parenthetical language: "(except that if the incompetency be due to physical disability or infirmity the consent of the incompetent must first be obtained)." The present Revised Code takes this statement out of parentheses, and makes a positive paragraph out of it. Prior to that time former §10989 GC, provided that a guardian might be appointed for a person physically disabled or infirm, but the Supreme Court of Ohio held in 1923 in the case of **Schafer v. Haller, Guardian, 108 Oh St 322,** 140 N. E. 517, that such a provision "is an unwarranted abridgment of the liberty of such person, and an unwarranted abridgment of his right to acquire, possess and protect property, and is in violation, in that respect of . . . . the Constitution of Ohio." The present "Consent" provisions have been held to be in accordance with law and the Constitution. **In re Watts, 60 Oh Ap 307 @ 311, 14 O. O. 239 @ 241, In re Faulder, 1 O. O. 63.**

Except for this single procedural difference, with regard to the requirements for the appointment of a guardian, no other part of the Probate Code makes any distinction between a guardianship for a mentally incompetent person and a person incompetent by reason of physical disability or infirmity. **Sec. 2111.01 R. C.** (Definitions) is all inclusive when it defines a "guardian" as "**any person** . . . . appointed by the probate court to have the care and management of the person, the estate, or both of a minor, incompetent, etc."; when it defines an "incompetent" as "**any person** who by reason of advanced age, improvidence, or mental or physical disability or infirmity, is incapable of taking proper care of himself or his property . . . ."; when it defines a "ward" as **any person** for whom a guardian as defined in this section is acting." Emphasis has been here added to the words "any person" to point out that undoubtedly the legislature intended no distinction as to "any person" who might fall within the terms of its definition. Further, **§2114.14 R. C.** uses the words "every guardian."

The legislature having neither established by specific terms nor logical implication from its language any distinction between a guardianship for a mentally incompetent person and a person incompetent by reason of physical disability or infirmity, it would be highly improper for a court to do so by judicial fiat. Whether or not there should be such a distinction is a matter for legislative, rather than judicial, consideration.

The nature of the legal relationship established by a "consent" guardianship is best pointed out by the following statement made by Judge Hornbeck of this appellate district **In re Guardianship of Jacobs, 73 Oh Ap 286 @ 289, 28 O. O. 449 @ 450:** "The Legislature recognized its inability to make physical infirmity alone the basis of the appointment of a guardian and inserted in §10507-2 GC (now §2111.02 R. C.), a provision whereby the Probate Court could name a guardian for an incompetent because of physical disability or infirmity if the incompetent consented

to the appointment, the effect of which would be a **waiver of the incompetent's constitutional right.**" When Mary C. Tillman consented to the appointment of her son, Chauncey H. Tillman, as guardian of her estate for reasons of physical disability or infirmity, she waived her constitutional rights to control the disposition of her own property and consented to having her property administered by a guardian who was subject to rules of law and the supervision of the probate court. It is well to note here that she did not have to give her consent to the appointment of any guardian over her property. She could have stood upon her constitutional rights and have insisted that the allegation of mental incompetency made in the application to have a guardian appointed for her be litigated. Instead she elected to waive her constitutional rights. Furthermore, at any time during the course of the guardianship she could have requested its termination, §2111.47 R. C.

To hold otherwise would be to make the guardian of a "consent" guardianship an agent of his ward, rather than an officer of the Court, and to substitute the judgment of the ward for the judgment of a court of law. The services of a court of law cannot be enlisted for rubber stamp purposes.

Having determined that no legal distinction exists in the administration of a "consent" guardianship and any other guardianship, we may proceed to examine the exceptions here filed without reference to the volume of testimony in the record concerning the requests and directions of the ward. Seasonable objections were made during the course of the hearing to the introduction of this testimony, the rulings to which were withheld. The holding here effectively disposes of those objections.

The first exception concerns four checks totaling $526.20 for labor charges in getting the ward's personal property ready for public sale. The guardian kept accurate records of the time spent, and the hourly rate paid was reasonable. It does, however, appear that in addition to getting property ready for sale, considerable accounted for time was also spent in going through family mementos and in selecting various items which were not sold but which were taken for their own personal use by the guardian and his other sister, Mrs. Tilden, without paying the guardianship anything for them. No claim is made in these exceptions for those items, so that question is not considered here. However, it is not proper for the guardian to charge his ward's estate with labor that was not for the benefit of the ward's estate, but was for his own or some third person's personal benefit. While the time spent on each project was not broken down in the testimony, from the evidence before it this Court determines at least one half of the time spent in getting ready for the sale was for the benefit of persons other than the ward and her estate. It is therefore ordered that Chauncey H. Tillman, the guardian, account to the estate of Mary C. Tillman, his ward for an additional sum of $263.10, the same being one-half of the amount excepted to; and to that extent Exception No. 1 is sustained.

The second exception concerns the "Christmas" checks, complaint being levied as to two of them, one in the amount of $500.00 which the guardian wrote to himself, and the other in the amount of $200.00 which he wrote for his sister, Mrs. Tilden. In addition the account in question

reveals that on the same date the above two checks were given, the guardian also wrote "Christmas" checks to the exceptor in the amount of $50.00; to David C. Tillman, a grandson of the ward, in the amount of $50.00; and to Mary Catherine Brown, a granddaughter, in the amount of $75.00. This account being before the Court for examination, these three other checks will also be considered in this decision.

Both the statutes and the case law of Ohio bind the guardian to the most scrupulous good faith in the management of his ward's estate, **Berkmeyer v. Kellerman, 32 Oh St 240.** A trustee is not permitted to manage his trust to make any gain or profit therefrom for himself, **Cox, Admr. v. John, 32 Oh St 532; In re Estate of Binder, 137 Oh St 26, 17 O. O. 364.** Sec. 2109.43 R. C., provides that "No fiduciary shall make any personal use of the funds or property belonging to a trust . . . ." Sec. 2109.44 R. C., provides that "Fiduciaries shall not buy from or sell to themselves nor shall they in their individual capacities have any dealing with the estate . . . ." Certainly, if a fiduciary cannot buy from or sell to himself, he cannot give any part of the funds of his trust to himself. Thus, the exceptions to the $500.00 Christmas gift made by the guardian to himself from guardianship funds in December, 1951, must be sustained.

The Christmas gifts to the other members of the ward's family are also bad, but for a different legal reason. The question here concerns the right of a guardian to use funds of an incompetent for the benefit of persons other than the incompetent. Such uses have been approved in other jurisdictions where a relationship of the person benefited to the incompetent was shown which might give rise to a moral, if not to a legal, obligation; where such person was shown to be in need of the funds used; and where there was some proof of what the incompetent might have done if he were competent. See Annotations in 59 A. L. R. 664 and 160 A. L. R. 1444. Further, the power of the court to make allowances out of the estate of an insane person for the purpose of carrying out the presumed wishes of such person has been extended to the case of donations for charitable and religious purposes. 25 Am. Jur., 52, par. 79. In such cases, proof of what the incompetent had formerly been in the habit of doing was important, In re Brice, 233 Iowa, 8 N. W. (2nd), 576. The only Ohio case found on this subject is that of **In re Beilstein, 145 Oh St 397; 31 O. O. 12; 62 N. E. (2nd), 205,** in which the Supreme Court refused to permit a guardian to use guardianship funds for the relief of an adult daughter of the incompetent who was in destitute circumstances. The per curiam majority opinion holds that "a Probate Court is without authority to apply the doctrine of substitution of judgment by ordering a trustee or guardian of an incompetent person to withdraw funds from the ward's estate for the support of another where there is no legal liability upon the ward for such support and no evidence that the ward himself, if sane, would furnish such support." Matthias, J., concurred in the judgment, but for the reason that in his opinion the Probate Court has no jurisdiction whatever to declare and enforce a liability where no legal liability exists.

The case at bar does not involve the use of an incompetent's funds for the benefit of a destitute relative. While there is here proof of what

the incompetent might have done if she were competent, there is no proof that the relatives who received the "Christmas" gifts in any way actually needed them. Nor is this the case of a gift for charitable or religious purpose, the persons who received the gifts certainly not coming within the contemplation of those terms. While the testimony does show that the ward here was in the habit of making various Christmas gifts, no case has been found anywhere which covers that kind of situation. As is pointed out in the Beilstein case, supra, "It is a dangerous doctrine for a court to so substitute its judgment. The doctrine too far advanced might lead to gross abuse." By any doctrine, for a court to permit a guardian to give away the funds of his ward certainly might establish a precedent that could easily lead to great abuse. The second exceptions are sustained in toto, and the court will order the guardian to account not only for the sums mentioned in the exceptions, but also for the other three gifts noted in this opinion.

The third exception, in three parts, concerns the payment by the guardian to himself and others for the care and support of his ward. Part a. of this exception may be disposed of summarily, it being established beyond a doubt that the matter there complained of was a bookkeeping error rather than an actual one, and the exception here is accordingly overruled.

The other two items of this third exception deals with the fact that the guardian, without applying to the court for authority to do so, increased from time to time the amounts paid to himself and his wife for his ward's care and support. At the beginning of the guardianship, the guardian obtained court authority for paying $15.00 per week for this care and support. On September 28, 1952, a little more than a year after the guardianship started, this amount was increased to $30.00 per week without court order. On June 14, 1953, the amount paid was again increased, this time to $40.00 per week, again without court order. The exceptor complains that such increases are unlawful and the credit asked is therefore invalid and against the best interests of the ward.

While §2111.13 R. C., provides that "no part of the ward's estate shall be used for the support, maintenance, or education of such ward unless ordered and approved by the court," the statute does not require that the order of the court for payment be made prior to the rendition of the services. See In re Estate of Burns, 52 Abs 134 (Court of Appeals for Darke County). The matter is now before the Court on these exceptions, and the court will now consider it, with the question being whether or not the payments made were reasonable under the circumstances. Compare In re Estate of Brown, 98 Oh Ap 298 at 304 and 305; 129 N. E. (2nd), 509, 57 O. O. 342.

The evidence in this instant case was substantial that as time went on the ward's physical condition deteriorated as a result of advancing years so that increasingly more care was necessary for her. In 1951, this court determined that $15.00 per week was an adequate figure. At that time she was ambulatory, and to a great extent able to take care of her own physical needs. At the time the guardian was paying himself and his wife the sums of $30.00 per week, and, again, $40.00 per week,

she was a bed patient in need of constant personal care. While no testimony was submitted to show the reasonable value of the services then rendered, as the finder of the facts in this case, from his own personal knowledge of what is required to maintain a person in Mary C. Tillman's condition, the court cannot find that the amounts expended for her care and support were unreasonable. It is interesting to note that the very account in question shows that the sum of $40.00 per week was paid to one rest home for the ward's care for three weeks, and the sum of $45.00 per week to another rest home for 38 weeks, and that no complaint has been made by the exceptor to these credits. Exception 3 is overruled.

An entry in accordance with opinion may be submitted by counsel for the exceptor.