**BARR, An Incompetent, Guardianship, In re.**

Probate Court, Miami County.

No. 36721. Decided November 7, 1958.

Rodney Blake, Sidney, Robert P. Fite, Piqua, for Catherine Barr, an Incompetent Person.

James H. DeWeese, Piqua, for the Guardian in the Guardianship.

## OPINION

By FAUST, J.

This matter came on to be heard upon the motion of Catherine Barr, an incompetent person, to terminate guardianship, testimony of witnesses and briefs of counsel.

Insofar as the motion before the Court in this cause invokes its jurisdiction only as to the termination of the guardianship, that she may manage her own affairs, the Court will confine its findings to that issue.

The Court finds from the evidence that on the 2nd day of July, 1953, Warnah A. Holeton and Charlotta Belle Hiegel made application to the Probate Court of Miami County, Ohio, requesting that a guardian be appointed for Catherine Barr, because of advanced age and physical disability.

That the said Catherine Barr, in writing, made choice of James H. DeWeese as guardian and respectfully petitioned the Court to appoint him as such guardian.

Sec. 2111.02 R. C., reads in part:

"When found necessary, the probate court on its own motion or an application _____ shall appoint a guardian _____.

"If a person is incompetent due to physical disability, the consent of the incompetent must first be obtained before the appointment of a guardian for him."

The records of the Court reveal that upon the solicitations of Warnah A. Holeton and Charlotta Bell Hiegel, next of kin of Catherine Barr in the County, and the choice and consent of the said Catherine Barr, the Court appointed James H. DeWeese, attorney at law, guardian of the estate of Catherine Barr and he has been acting in this capacity for the past five years.

Tillman, An Incompetent, In re, 73 Abs 534.

1. There is no legal distinction between a guardian for a mentally incompetent person and a person incompetent by reason of physical disability or infirmity, except that specified in §2111.02 R. C., which requires that a person for whom a guardian is to be appointed for reason of Physical disability or infirmity must consent to the appointment of a guardian.

2. The legal effect of a "consent" to the appointment of a guardian for a person incompetent by reason of physical disability or infirmity is a waiver of that person's constitutional rights and her consent to having her estate administered by a guardian who is subject to rules of law and the supervision of the probate court.

Judge Ziegel stated **In re Tillman, 73 Abs 534** that

"The legislature having neither established by specific terms nor logical implication from its language any distinction between a guardianship for mentally incompetent person and a person incompetent by reason of physical disability or infirmity, it would be highly improper for a court to do so by judicial fiat. Whether or not there should be such a distinction is a matter for legislative, rather than judicial consideration."

Catherine Barr, by her voluntary consent agreed to be bound by the laws of the Guardianship of the State of Ohio. The guardian whom she chose, and was thereafter appointed by the Court, is bound by the same laws and the same requirements as any other guardian. The Guardianship laws provide no separate code of duties.

See **In re Tillman, 100 Oh Ap 295.**

"The Probate Court is not the agent of the applicant in any case or in any proceeding in which a guardian is sought. The Probate Court is not the agent of the person for whom a guardian is sought. The Probate Court is the agent and the arm of the state for the purpose of protecting and preserving the property of a person for whom a guardian has been appointed."

**In re Joyce, 19 O. O. 506; 32 Abs 553.**

Unlike the **Luft case (91 Oh Ap 409)**, the Court finds that the guardian and ward did co-operate for several years. Upon the development of the testimony it would appear that they would consult frequently and the guardian would petition the Court with the ward's written consent for improvements upon the farm.

Apparently the suggestion to sell off some of the farm in lots was made by the ward, and subsequently because of a rumor about the costs of the survey, she testified that she lost confidence in the guardian and wants to make a change by terminating the guardianship.

Guardianship proceedings in the Probate Court are public records, open for inspection by any interested person. To the Court's knowledge no one other than Mr. Blake, attorney for ward, investigated the trust and that relative to termination of the guardianship of the estate of Catherine Barr.

Upon written application of any party interested in the trust estate or when the Court deems it necessary, will cause an investigation to be made of administration of the trust. No such request was made to this Court.

The Court has a right to presume, in the absence of anything to the contrary, that the guardian has rightly performed his duties devolving upon him in discharging the trust.

A guardian will not be asked or expected to do impossible things. An honest effort, with good intentions and good business conduct, are all that will or can be expected.

In re France v. Frantz, 4 O. N. P. 278.

May a Probate Court terminate a guardianship for physical disability upon the motion of the ward and before the removal of the disability?

To terminate a guardianship under §2111.47 R. C., there must be satisfactory proof that the necessity for the guardianship no longer exists or that the letters of appointment were improperly issued.

**Williams, an Incompetent, Guardianship, In re, 78 Abs 98.**

"when one has voluntarily consented to the apointment of a guardian under the statutes providing for such appointment and the court has acted upon the matter and made the appointment, the ward cannot terminate the guardianship by merely withdrawing his consent.

"His constitutional rights are protected by §2111.47 R. C., wherein provision is made for the court to determine in a proper hearing whether the necessity for the guardianship continues to exist. The ward cannot take away the jurisdiction of the court to make such determination. However, the judgment of the Court is subject to review on appeal."

As the ward is a woman of advanced years, the Court permitted considerable latitude in the testimony concerning the appointment and her business affairs in order to observe and determine whether or not Catherine Barr would now be able mentally and physically to manage her own affairs.

In part of her testimony Catherine Barr stated that she would not be able physically to care for her own affairs, that things were not going to suit her, that she wanted to make a change and give her nephew Warren Holeton, Power of Attorney to represent her.

The Court appointed Dr. Burton Hyde, medical doctor, to examine Catherine Barr and he testified that mentally she was competent but was physically incompetent to handle her own affairs and would need help from someone to aid and assist her.

If there was a necessity five years ago for the appointment of a guardian for the estate of Catherine Barr at age 86 years, and one was appointed, was her physical condition improved to such an extent now at age 92 years, that she no longer needs a guardian to manage and direct her affairs under the supervision of the Court?

The Court can readily understand a circumstance wherein a person is seriously injured or ill and requests the Court to appoint a guardian because of his physical incompetency; upon his recovery and request for termination the Court would grant the termination as the necessity for the guardianship would no longer exist.

"The provisions of this section are mandatory and upon a proper showing being made, the guardianship shall be terminated."

**In Re: Guardianship of Tillman, 100 Oh Ap 295.**

**492**

In an attempt to terminate the guardianship, under physical disability, the incompetent must prove to the satisfaction of the Court that she is now better able to care for her property than at the time of the appointment, or that conditions have changed and that a guardian of her estate is no longer necessary.

The testimony of Catherine Barr and the evidence does not reveal to this Court that the necessity for the guardianship no longer exists and that she is now able to manage her own affairs, thus it does not warrant the termination of the guardianship.

The motion to terminate the guardianship of Catherine Barr is therefore overruled until further order of the Court.

Counsel may prepare entry accordingly saving exceptions.